SILAS H. DAVIS'S ADMX. *v.* RUTLAND RAILROAD COMPANY.

Special Term at Rutland, November, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed January 16, 1909.

*Pleading—Amendment of Declaration—New Cause of Action— Master and Servant—Injuries to Servant—Assumed Risk— Instructions—Going Beyond Evidence—Exceptions—Too General—Presumption in Favor of Ruling Below—Findings of Fact.*

On motion for leave to amend a declaration, if the court is in doubt, on inspection of the original declaration and the proposed amendment, whether each declares on the same cause of action, it may inquire dehors them.

Where it is necessary in order to sustain the action of the lower court in allowing an amendment of a declaration, the Supreme Court will presume that the court below inquired dehors the pleadings and found that the original declaration and the allowed amendment thereof declare on the same cause of action.

It is permissible to amend a declaration by alleging the same matter more fully or differently, but not by setting up a different matter.

A declaration, in an action for the death of a railroad employee, which

failed to deny decedent's knowledge of the alleged breaches of duty, was properly amended to cure the infirmity.

In an action against a railroad company for the death of a locomotive engineer, defendant's motion for a directed verdict on the ground that there was no evidence of decedent's ignorance of defendant's alleged breaches of duty, one of which was failure properly to equip a car, leaving the brakes in a defective, negligent and dangerous condition, was properly overruled, where it was manifest, and defendant practically conceded, that decedent neither knew nor could be charged with knowing the condition of the brakes on the car in question.

In an action for the death of defendant's servant, its motion for a directed verdict, on the ground that there was no evidence of decedent's ignorance of the alleged breaches of duty, did not raise the question of decedent's assumption of the risk of one of the alleged breaches as an ordinary risk of his employment, since such risks are assumed regardless of the servant's knowledge thereof.

Where defendant submitted ten requests to charge, covering practically the whole law of the case, an exception to the court's refusal to charge as requested and to the charge as given on the subject-matter of the requests is too general and indefinite to be available.

A railroad company's rule that "when cars are placed on a siding, the brakes must be set, and if on a grade, the wheels must be blocked, and derailing switches, where in use, must be set to ground," applies only when a car is placed on a siding to be left, and not where a car was shifted to a siding to pass over it and be taken by a train then waiting for it.

In an action against a railroad company for the death of a servant, the practical construction by defendant's employees of one of its rules of doubtful import is evidence to be considered in determining its meaning.

Where the construction of defendant railroad company's rule was submitted to the court, and there was evidence of a certain practical construction thereof by defendant's employees, the court's interpretation in conformity with such practical construction is conclusive.

In an action against a railroad company for the death of a locomotive engineer resulting from a collision with a runaway car, where there was no evidence that better means for stopping runaway cars were in use on other railroads, nor that any means other than

those used by defendant would have been more effective, except that there was evidence that their switch keys had been taken from station agents along the line so that they were unable to derail the car when notified by the train dispatcher, a charge, going beyond the matter of the switch keys, and allowing the jury to inquire generally whether any and what other means should have been provided, was erroneous as not justified by the evidence.

CASE for negligence. Plea, the general issue. Trial by jury at the March Term, 1908, Rutland County, *Taylor*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

At the close of all the evidence, the defendant moved for a verdict on the grounds stated in the opinion. Motion overruled, to which the defendant excepted.

It appeared that at the time of the accident, June 20, 1906, plaintiff's intestate was a locomotive engineer in the employ of the defendant, and was running a locomotive drawing a passenger train from Rutland to Bellows Falls, which route would pass through the stations at East Clarendon, Cuttingsville, and East Wallingford; that his locomotive, train, and equipment were in good order; that he was a careful and competent engineer and managed his locomotive on this occasion in a careful and prudent manner; that for several miles east of the station at East Wallingford to the city of Rutland the railroad is on a sharp down grade; that at each of said stations there were side tracks and spur tracks connected with the main line with switches and equipped with derailing devices whereby cars might be thrown from the track and "ditched" to prevent them from escaping to the main line; that the derailing device at East Wallingford was on the west side of the main track and upon about an even grade therewith; that said derailing device was the best in use, and such as was in common use on other railroads throughout the country, but that on the occasion in question it was not "set to ground," so as to "ditch" a moving car and prevent it from taking the main line.

Defendant's evidence tended to show that on June 20, 1906, the car in question was taken from the side track on the east side of the main line at Wallingford station by coupling a locomotive thereto, pulling it south past a switch and then pushing it back upon the main track; that before taking the car from

said side track the brakes were tested and found to be in good order; that later when the car was on the main line the brakes were again tested and found to be effective and to hold the car on the main line; that still later in the same day this car was shifted to the siding, or passing track, on the west side of the main line at said station; that a brakeman was then on the car, and he tried to stop it by means of the brakes; that the chain of the brake "kinked" so that it would not bring the shoes against the wheels, in consequence whereof the brakeman was unable to stop the car and it escaped over the derailing device to the main line; that the brakeman repeatedly tried to stop the car by applying the brake, but in vain on account of said "kinking"; that the car continued to move rapidly north along the main line through Cuttingsville station to East Clarendon station where it collided with the engine operated by plaintiff's intestate as aforesaid, and killed him; that when said car approached the main line at East Wallingford and it became evident that it would escape, the station agent there telegraphed the train dispatcher at Rutland; whereupon the train dispatcher telegraphed the station agents at East Clarendon and Cuttingsville informing them of the situation and instructing them to use all means to stop or derail the car; that the car was running at a high rate of speed, and when the agent at Cuttingsville received notice from the dispatcher it was too late seasonably to reach the switch south of the station. It appeared that the car in question had been loaded with pulp while standing on said side track east of the main line, and that at the time of its escape it was being shunted to the passing track on the west side of the main line for the purpose of being then taken into a north bound train.

Plaintiff's evidence tended to show that about nine minutes elapsed from the escape of the car till its collision with the intestate's locomotive, and that the car during that time did not attain a greater speed than forty miles an hour; that by the use of the telegraph the agents at Cuttingsville and East Clarendon might have been advised of the escape in time to have derailed the car, but that neither of said agents was provided with a switch key wherewith to open the main line track and derail the car, that a fruitless attempt at such derailment was made by the station agent at East Clarendon by placing obstructions on the track; and that agent testified that before the arrival of the car at that station he took a crowbar and started towards the

switch to break the lock, but failed to reach it before the car passed.

*M. C. Webber,* and *P. M. Meldon* for the defendant.

The amended count was improperly allowed to be filed, for it states a new cause of action. *Carpenter* v. *Gookin,* 2 Vt. 495; *Dana* v. *McClure,* 39 Vt. 197; *Broedeck* v. *Hirschfeld,* 57 Vt. 12; *Sumner* v. *Brown,* 34 Vt. 194; *McDermid* v. *Tinkham,* 53 Vt. 615; *Daley* v. *Gates,* 65 Vt. 591; *Estabrooks* v. *Fid. Mutual Fire Ins. Co.,* 74 Vt. 202; *Pollard* v. *Barrows,* 77 Vt. 1.

The court erred in charging as it did in respect of the duty of defendant to provide ''other means'' for stopping a runaway car. The jury were permitted on mere speculation to find culpable negligence on the part of defendant. *Whalen* v. *Mich. Cent. R. R.,* 114 Mich. 512. The employer is not liable for personal injuries received by the employee, although the employer might have adopted a safer method of doing business. Elliott on Railroads, §1289; *Clifford* v. *Old Colony R. Co.,* 141 Mass. 564; *Hodgkins* v. *Eastern R. R. Co.,* 119 Mass. 419.

*Butler & Moloney* for the plaintiff.

ROWELL, C. J. This is case for negligence in causing the death of the intestate by means of an escaped freight car colliding with an engine that was being run by the intestate as defendant's servant, hauling a passenger train from Rutland to Bellows Falls.

The original declaration, which contained but one count, did not allege that the intestate did not know of the different breaches of duty therein alleged, and the plaintiff was allowed to file an amended count supplying that omission. It is objected that this was error, for that the original declaration showed no cause of action, and to amend by showing one, was to declare upon a new cause of action, which is not allowable. But there was something to amend by, and if the court was in doubt on inspection of the original declaration and the amended count whether the latter declared upon the same cause of action as the former or not, it could inquire dehors them, to ascertain how the fact was; and if necessary in order to support its action, we should presume it did inquire, and found that it declared upon

the same cause.  *Lycoming Fire Ins. Co.* v. *Billings,* 61 Vt. 310, 17 Atl. 715.  And besides, the test is, whether the proposed amendment is a different matter, or the same matter more fully or differently laid.  If the latter, you can amend; if the former, you cannot.  *Daley* v. *Gates,* 65 Vt. 591, 27 Atl. 193.  Now here it is obvious on inspection that the amended count does not declare on a different matter, but on the same matter more fully and accurately laid, and so no error.

The defendant moved for a verdict on the amended count, for that there was no evidence tending to show that the intestate did not know of the different breaches of duty therein assigned. The motion was overruled.  Six breaches were assigned, but only four submitted to the jury.  These were (1) not properly equipping said car, in that the brakes were defective, insufficient, and in a negligent and dangerous condition; (2) allowing the derailing device to be insufficient and misplaced; (3) not establishing rules and regulations for the government of employees in operating said device and having it in proper condition; and (4) not providing means for derailing cars that had escaped on to the main line, and for preventing them from doing damage. .

But the court could not grant the motion, for that would have deprived the plaintiff of the opportunity of going to the jury on the claim that the defendant was negligent in not properly equipping the car in that the brakes were defective, insufficient, and in a negligent and dangerous condition, whereas the defendant practically concedes that the intestate neither knew nor can be charged with knowing the condition of the brakes in this respect, for it says in its brief that the uncontradicted testimony was that the intestate knew, or should have known, of all the risks, "except the alleged defective brake." And this exception is justly made, for the car was a foreign car, and came into the defendant's yard at Rutland only eight days before the accident, and was taken to East Wallingford three days later, and placed and loaded on a spur track, where it remained till the day of the accident, so that it is easy to say that the intestate knew nothing about the car nor the condition of its brakes.

The defendant invokes under this motion the doctrine that the servant assumes the usual and ordinary risks incident to his employment, and applies it to the failure of the brake to work

and hold the car because the chain suddenly kinked, as its testimony tended to show, a thing that sometimes happens. But the motion did not raise that question, for such risks are assumed whether the servant knows of them or not, whereas the only ground of the motion is, absence of testimony to show want of knowledge on the part of the intestate.

The defendant submitted ten requests to charge, covering practically the whole law of the case, and excepted to the refusal of the court to charge as requested, and to the charge as given on the subject-matter of the requests. This exception is too general and indefinite to be available.

The defendant had a set of "standard rules" governing the operation of its road and instructing its employees, one of which was that "when cars are placed on a siding, the brakes must be set, and if on a grade, the wheels must also be blocked, and derailing switches, where in use, must be set to ground." The defendant claimed that its duty to protect its main line from escaping cars and to make its derailing devices efficient by proper rules and regulations, had been fulfilled by promulgating said rule, and that its construction was matter of law for the court, and that the court should instruct the jury thereon, which the court did, and instructed that the rule did not apply to the situation presented in the case, but was made to apply when cars were placed on a siding to be left, and not for the purpose of passing over the track in shifting. The court said that it arrived at that construction from the language of the rule itself, but found it consistent with the conduct of the defendant and its employees in operating under it, and therefore further instructed that the testimony disclosed no rule that was applicable to the case.

The defendant excepted to this part of the charge, and contends that it was erroneous, for that the rule itself shows that it did apply to the case, and for that the testimony furnished proof of the understanding of employers as to the application of the rule, and that as matter of fact it was understood to apply to just such a case as the shifting from the main line to a siding, and that in view of this evidence it was error to charge that the rule did not apply.

But we think the court was right, for the car, with a brakeman on it, was shifted to the siding for the purpose of passing over it to be taken north in a train then waiting for it, and it

would have to pass over the derailing switch in the lower end of the siding, or the train would have to back over that switch to reach the car, and to block the wheels and set the derailer to ground in these circumstances would have so hindered and delayed the business in hand that it seems reasonable to say that the rule was not intended to apply in such a case; and if that rule did not apply, the testimony disclosed none that did apply. And especially do we think the court was right, for it found that its construction of the rule was consistent with the conduct of the defendant and its employees in operating under it, which amounts to finding that they gave it the same construction the court did; and there being doubt as to the meaning of the rule, this practical construction is entitled to great weight. And although, as claimed by the defendant, the testimony of one witness to which it refers tended to show that the employees understood that the rule applied to cases like this, and that it was in fact so applied, yet that is not controlling, for as the construction of the rule was submitted to the court, and the matter of practical construction was pertinent to the question, its finding of such construction is conclusive if there was evidence to support it, and it appears that there was, and it is not claimed that there was not. *Cleveland* v. *Washington,* 79 Vt. 498, 65 Atl. 584.

As to not providing means for derailing cars that escape on to the main line, and for preventing them from doing damage, the court charged that it was the duty of the defendant to exercise the care and prudence of a prudent man to secure the reasonable safety of its ways in that regard, and that the jury would say whether it was negligent in not providing "other means" for arresting such a car than those that were available at the time of the accident; that the thing complained of was, that "other means" than those available were not provided; that it was said in argument that it was not the duty of the plaintiff to point out what other means should be used, but that it was the duty of the defendant to foresee what might happen, and provide means so that in case a runaway car escaped down over the grades above Rutland, there should be some means at hand to arrest its progress, and that that was the question to be considered under that ground: "Would a prudent man have provided some means other than those that were available for that purpose?" The court told the jury that it would not rehearse

the testimony bearing on that particular phase of the case, as they would have in mind what took place—the sending of the message from East Wallingford to the train.dispatcher at Rutland; his wiring the station agent at Cuttingsville and at East Clarendon; the attempts made at those places to stop the car; the facts as to the switch keys not being in the hands of those agents; those things and others disclosed by the evidence bearing upon the question; which was not whether the station agents at those places were negligent, but whether the defendant was negligent in not providing "other means" than those that were available for arresting the progress of that car; that the defendant said that that could be done only by having some device in the form of a derailing switch in the main line, which could not be tolerated; but that it was suggested that "other means" might have been provided, and argued that the switch keys should have been in the hands of the station agents, so that they could use them readily for the purpose of making a derailment; that those were all matters to be considered as bearing upon the question whether what had been done by way of preparation for a possible accident of this kind was what a prudent man would have done under the circumstances; that if it was, the defendant would not be liable on that ground; but if the jury was satisfied that the defendant was negligent in not providing "other means" for stopping or derailing the runaway car, and that that negligence was the proximate cause of the injury, the defendant would be liable, if the other elements of the plaintiff's case were made out.

The defendant contends that this was error, for that no evidence had been submitted that any better means were in use by other railroads; nor that any other means would have been more effective; nor that it would have been practicable to provide other means; and that the jury was allowed to speculate as to whether any other and what means should have been provided, and permitted to consider whether some means suggested by counsel, or by their own ingenuity or folly, would not have prevented the accident. The plaintiff's answer to this is, that there was no submission of any speculative means, but only of the issue made by the evidence without objection; that the plaintiff had shown that the station agents had been deprived of their switch keys, and that when the trouble came the dispatcher called upon them, helpless as they were, to derail the

car any way they could; that the court submitted only the fact of the switch keys having been taken from the agents, and if that was not a proper issue for the jury, the defendant should have refrained from putting in evidence to sustain its side of it, and waived its right to make the claim now insisted upon when it allowed the plaintiff's testimony to come in without objection.

But the charge went beyond the matter of the switch keys having been taken from the station agents; and it would seem that the court so understood it, else it would have confined the charge to that issue, and not left the jury at liberty to inquire generally and at large, as it did, whether any and what other means should have been provided. And the charge went not only beyond that issue, but beyond the testimony in the case, for barring the matter of the switch keys, there was, as the defendant claims, no testimony that any better means were in use by other railroads, nor that any other means would have been more effective, nor that it would have been practicable to provide other means. This exception is sustained.

As the questions presented by the exception to the admission of certain testimony, and the exception to the charge on the subject of damages, are such that they are not likely to arise again, they are not considered.

*Reversed and remanded.*